PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
SHELLEY D. WEGER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

Apr 12, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SHERRI PAPINI, <br><br> Defendant. | CASE NO. 2:22-cr-0070 WBS <br><br> 18 U.S.C. § 1341 – Mail Fraud (34 counts); <br> 18 U.S.C. § 1001(a)(2) – Making False Statements; |

I N F O R M A T I O N

COUNTS ONE THROUGH THIRTY-FOUR: [18 U.S.C. § 1341 – Mail Fraud]

The United States Attorney charges: T H A T

SHERRI PAPINI,

defendant herein, as follows:

**I.   INTRODUCTION**

At all times relevant to the Information:

1.  SHERRI PAPINI resided in or around Redding, California, in the State and Eastern District of California, except for approximately 22 days that she resided with her ex-boyfriend (hereinafter "Ex-Boyfriend") in Costa Mesa, California, by her own arrangement and of her own free will.

2.  The California Victim Compensation Board ("CalVCB") provided financial assistance to

California victims of violent crimes. Applications for assistance were signed by victims seeking assistance from CalVCB. Payment requests for financial assistance were made by the victims and approved by the CalVCB. Then checks were issued from the California State Controller's Office ("CSCO") and mailed to the designated recipient (either the victim or directly to the entity to be reimbursed, such as a therapist or emergency services provider).

## II. SCHEME TO DEFRAUD

3. Beginning in or about December 2015, and continuing until at least in or about March 2021, defendant SHERRI PAPINI knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain funds by means of materially false and fraudulent pretenses, representations, promises, half-truths, and the concealment of material facts.

4. The purpose of the scheme was to obtain funds directly and indirectly from the CalVCB intended as financial assistance for California victims of violent crimes, including funds to pay for PAPINI's ambulance expenses, therapist expenses, and home improvements.

## III. MANNER AND MEANS

In furtherance of the fraud, SHERRI PAPINI employed, among others, the following ways and means:

5. In November 2016, PAPINI disappeared for several weeks and, as a result, law enforcement conducted a nation-wide search for PAPINI. When she returned, PAPINI falsely told law enforcement officers and others that she had been abducted by two Hispanic women at gunpoint. In truth and in fact, PAPINI had never been abducted against her will, but had instead arranged to stay with Ex-Boyfriend in Costa Mesa, California, during the period of her disappearance.

6. After her return, PAPINI applied to CalVCB to obtain money based on her claimed status as a kidnapping victim, and subsequently received funds to pay for new blinds in her home, ambulance costs incurred upon her return, and therapist costs for alleged anxiety and PTSD from her supposed kidnapping.

7. PAPINI signed an application to receive CalVCB funds. The application signed by PAPINI contained false statements regarding her supposed kidnapping, including that she had been ordered into a vehicle by two suspects with handguns, that the suspects held her captive for 22 days

before releasing her, that she had attempted to escape several times, and that PAPINI had "fully cooperated with the investigation." PAPINI's application sought crime-related expenses for "Medical and/or dental expenses," "Moving or relocation expenses," "Mental health treatment," and "Home security improvements." PAPINI signed the CalVCB application under penalty of perjury. Above her signature was the following statement:

> I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true, correct and complete to the best of my knowledge and belief. I understand that I may be found to be ineligible for benefits, and that action may be taken to recover benefits I receive if I provide information that is false, intentionally incomplete, or misleading.

8. The statements in PAPINI's CalVCB application were false. PAPINI was not ordered into a vehicle by two people with handguns, she was not held captive for 22 days, she did not attempt to escape several times, and she had not fully cooperated with the investigation. In truth and in fact, at her own request, PAPINI was picked up by Ex-Boyfriend who was driving a rental car, and voluntarily rode with Ex-Boyfriend from the Redding area all the way south to his house in Costa Mesa. PAPINI voluntarily stayed at Ex-Boyfriend's house for approximately 22 days, was not held captive, and did not attempt to escape because she was not restrained and was free to leave at any time. Furthermore, rather than cooperating with the investigation, PAPINI lied about the circumstances of her disappearance to law enforcement.

9. In order to carry out the scheme and prevent its detection, starting at least in or about December 2015, PAPINI sought to conceal the true circumstances of her disappearance by making statements, taking actions, and causing the actions of others that included, but are not limited to, the following:

   a) PAPINI began communicating with Ex-Boyfriend as early as December 2015 while seeking to conceal the existence of their communications by using her work phone and later prepaid cellular phones, despite the fact that PAPINI possessed her own personal cellular phone.

   b) PAPINI instructed Ex-Boyfriend to purchase prepaid cellular telephones that were not listed in her name. Following these instructions, Ex-Boyfriend purchased two prepaid

| | | |
|---|---|---|
| 1 | | cellular telephones: one was purchased in December 2015 in Ex-Boyfriend's name and |
| 2 | | the other was purchased in March 2016 listing Ex-Boyfriend's address. PAPINI began |
| 3 | | using the prepaid cellular telephone that had been purchased by Ex-Boyfriend in March |
| 4 | | 2016. |
| 5 | c) | Using among other things the prepaid cellular telephones and a cellular telephone |
| 6 | | provided by her employer, PAPINI communicated to Ex-Boyfriend her plans to run |
| 7 | | away. |
| 8 | d) | PAPINI instructed Ex-Boyfriend when and where to meet her in Redding, California, so |
| 9 | | that he could pick her up and drive her to Ex-Boyfriend's residence in Costa Mesa, in |
| 10 | | Southern California. Ex-Boyfriend asked a friend to rent a car for him. On October 31, |
| 11 | | 2016, the friend rented a car for Ex-Boyfriend. |
| 12 | e) | Starting on or around November 1, 2016, Ex-Boyfriend drove the rental car to Redding, |
| 13 | | California, where he waited for further instructions from PAPINI. |
| 14 | f) | On November 2, 2016, at approximately 10:57 a.m., PAPINI used her prepaid cellular |
| 15 | | phone to send a text message to Ex-Boyfriend. Around noon that day, PAPINI left her |
| 16 | | home in running attire and carrying her regular cellular telephone and the prepaid cellular |
| 17 | | telephone she had used to communicate with Ex-Boyfriend. PAPINI met Ex-Boyfriend |
| 18 | | at the location she designated near Sunrise Drive and voluntarily got into the rental car. |
| 19 | | Before doing so, PAPINI left her regular cellular telephone on the ground next to strands |
| 20 | | of her hair. |
| 21 | g) | PAPINI and Ex-Boyfriend traveled by car to Ex-Boyfriend's residence in Costa Mesa, |
| 22 | | California. |
| 23 | h) | PAPINI voluntarily stayed at Ex-Boyfriend's residence for over three weeks, until on or |
| 24 | | about November 23 or 24, 2016. During that time, PAPINI took steps to make it appear |
| 25 | | as if she had been physically abused. |
| 26 | i) | PAPINI stayed indoors and instructed Ex-Boyfriend to keep her presence at the house |
| 27 | | secret. On two occasions Ex-Boyfriend's relative saw PAPINI unrestrained inside Ex- |
| 28 | | Boyfriend's house, but did not report it to law enforcement. |

| | | |
|---|---|---|
| 1 | j) | Ex-Boyfriend asked the same friend to rent a car for him to drive PAPINI back to |
| 2 | | Northern California. On or about November 23, 2016, Ex-Boyfriend's friend rented |
| 3 | | another rental car. |
| 4 | k) | On or about November 23 and 24, 2016, PAPINI and Ex-Boyfriend drove the rental car |
| 5 | | from Costa Mesa, California, to Northern California. Ex-Boyfriend dropped off PAPINI |
| 6 | | near Interstate 5 ("I-5") in or around Woodland, California, wearing various bindings to |
| 7 | | further her false narrative that she had been kidnapped. |
| 8 | l) | PAPINI was eventually recovered by a law enforcement officer around I-5 on November |
| 9 | | 24, 2016. When interviewed by law enforcement officers that day, PAPINI stated falsely |
| 10 | | that two Hispanic women had abducted her at gunpoint. |
| 11 | m) | PAPINI repeated her false claims that she had been abducted by two Hispanic women |
| 12 | | and provided additional details of her supposed kidnapping during additional interviews |
| 13 | | and communications with law enforcement officers. These communications included |
| 14 | | direct statements from PAPINI as well as statements she communicated indirectly via her |
| 15 | | then-husband, including on or about the following dates: November 28 and 29, 2016; |
| 16 | | March 2, 2017; March 31, 2017; June 5, 2017; June 8, 2017; June 22, 2017; June 27, |
| 17 | | 2017; August 14, 2017; October 26, 2017; November 8, 2017; March 16, 2018; March |
| 18 | | 21, 2018; May 7, 2018; and August 13, 2020. These communications included multiple |
| 19 | | conversations with an FBI sketch artist to create FBI "Wanted" posters based on |
| 20 | | PAPINI's descriptions of the two Hispanic women she claimed abducted her. |

10. In addition to signing the CalVCB application, PAPINI signed a "Declaration of Understanding of Application and Expenses." PAPINI initialed after each requirement and signed the Declaration on the same day as the application. In the declaration, PAPINI placed her initials next to box 4 which stated, "I understand that by initialing next to #4 I am requesting mileage reimbursement for <u>crime related</u> medical, dental or mental health appointments." (Underline in the original). Papini also initialed acknowledging that she would be notified in writing by the California Victim Compensation Program regarding the approval or denial of each bill submitted.

11. The application was submitted on behalf of PAPINI to CalVCB. On or about December

7, 2016, CalVCB mailed a letter to PAPINI confirming receipt of the application and enclosing additional information about the program, including the following statement: "The CalVCB can help victims of crime that occur in California and who are injured or threatened with injury." On or about December 9, 2016, CalVCB approved PAPINI's application.

12. CalVCB limited the number of mental health sessions that could be reimbursed per application based on the claimant's filing status. If the claimant reached or was within eight sessions of their mental health session limit, CalVCB required an Additional Treatment Plan to be submitted and approved before sessions exceeding the limit would be considered for reimbursement. PAPINI's therapist submitted multiple Additional Treatment Plans diagnosing PAPINI with Acute Post-Traumatic Stress Disorder ("PTSD") and reciting the same core lies PAPINI had told about her supposed kidnapping, including that PAPINI had been "kidnapped at gunpoint," "held hostage for 22 days," and "physically and emotionally tortured, beaten, burned, branded, and drugged." The Additional Treatment Plans also stated the following to explain why additional treatment was needed: "Due to the dramatic nature of the crime and the fact that client has had multiple interviews with law enforcement agencies, the trauma has been reactivated on multiple occasions;" that one of "[t]he greatest factors affecting this client's treatment include the fact that her captors have not been located . . ." Based on these submissions, the CalVCB approved additional mental health treatments be reimbursed for PAPINI's supposed continuing posttraumatic stress through at least March 2021.

13. Once payment requests for financial assistance were approved by the CalVCB, the California State Controller's Office ("CSCO") mailed checks to the designated recipient. PAPINI was notified of every reimbursement CalVCB made as part of the Victim Assistance program via detailed statements mailed to PAPINI's home address. These letters stated in part:

> Dear Sherri Louise Papini
>
> We have reviewed the bills or payment requests you submitted. Some or all of the losses you had as a result of the crime are covered by our program. The attached Payment Summary explains what we will be able to pay at this time. . . .
>
> For medical and mental health bills, we pay at set rates. . . . [W]hen any of your providers cash our checks to them, this means they accept our payment on the crime-related portion of your bills as payment in full. . . .

14. PAPINI's false statements in her CalVCB application and the false statements caused by PAPINI in the Additional Treatment Plans were material because they had a natural tendency to influence, and were capable of influencing, CalVCB's decision to approve PAPINI to receive funding.

15. From December 2016 through March 2021, PAPINI received over $30,000 in funds from CalVCB either directly or indirectly through payments sent to others for her benefit, such as to PAPINI's ambulance provider and her therapist.

## IV. USE OF THE MAILS

16. On or about the date listed below, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, SHERRI PAPINI did knowingly cause to be deposited, and did knowingly cause to be delivered, matter and things to be sent and delivered by the U.S. mail according to the directions thereon, as more specifically set forth below:

| COUNT | ON OR ABOUT DATE | MAIL MATTER | SENDER |
|---|---|---|---|
| 1 | 4/26/2017 | Payment of $901.32 to the ambulance provider who transported PAPINI after her return | CSCO |
| 2 | 6/5/2017 | Payment of $81.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 3 | 8/7/2017 | Payment of $2,997.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 4 | 10/9/2017 | Payment of $1,084.53 to the ambulance provider who transported PAPINI after her return | CSCO |
| 5 | 12/11/2017 | Payment of $411.30 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 6 | 1/11/2018 | Payment of $91.40 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 7 | 2/8/2018 | Payment of $405.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 8 | 2/26/2018 | Payment of $70.60 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 9 | 4/13/2018 | Payment of $1,215.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |

| 10 | 6/25/2018 | Payment of $486.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 11 | 6/27/2018 | Payment of $81.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 12 | 6/29/2018 | Payment of $1,944.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 13 | 7/11/2018 | Payment of $162.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 14 | 8/20/2018 | Payment of $567.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 15 | 9/4/2018 | Payment of $1,134.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 16 | 12/7/2018 | Payment of $1,640.80 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 17 | 12/14/2018 | Payment of $627.20 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 18 | 12/19/2018 | Payment of $243.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 19 | 1/8/2019 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 20 | 2/19/2019 | Payment of $486.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 21 | 3/15/2019 | Payment of $567.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 22 | 4/16/2019 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 23 | 6/3/2019 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 24 | 6/21/2019 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 25 | 7/16/2019 | Payment of $648.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 26 | 10/7/2019 | Payment of $2,430.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |

| 27 | 12/2/2019 | Payment of $1,134.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
|---|---|---|---|
| 28 | 1/16/2020 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 29 | 2/18/2020 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 30 | 2/20/2020 | Payment of $486.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 31 | 4/23/2020 | Payment of $648.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 32 | 7/28/2020 | Payment of $891.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 33 | 3/2/2021 | Payment of $1,458.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |
| 34 | 3/8/2021 | Payment of $972.00 to PAPINI's therapist in fraudulent treatment for anxiety and PTSD from her "kidnapping" | CSCO |

All in violation of Title 18, United States Code, Sections 2 and 1341.

COUNT THIRTY-FIVE: [18 U.S.C. § 1001(a)(2) – Making False Statements]

The United States Attorney charges: T H A T

SHERRI PAPINI,

defendant herein, on or about August 13, 2020, in the State and Eastern District of California, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the United States Department of Justice, Federal Bureau of Investigation (FBI), in that during an interview with an FBI special agent regarding the investigation of PAPINI's purported 2016 kidnapping by two Hispanic women, PAPINI (1) falsely and fictitiously stated and represented the younger of the two kidnappers let her go and was the nicer of the two, and that the older kidnapper was really abusive and really mean and did all of the really terrible things, and (2) falsely denied Ex-Boyfriend's involvement, that Ex-Boyfriend picked PAPINI up at her request, and that there was in fact no abduction. In truth and in fact, as PAPINI then well knew, she was not abducted by two women,

abused, and later released, but instead, had asked Ex-Boyfriend to pick her up and take her back to his home where she voluntarily resided for approximately 22 days, during which time she took steps to make it appear as if she had been physically abused, and after which Ex-Boyfriend drove PAPINI back to Northern California at PAPINI's request.

All in violation Title 18, United States Code, Section 1001(a)(2).

Dated: 4/12/2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Veronica M.A. Alegría*
VERONICA M.A. ALEGRIA
SHELLEY D. WEGER
Assistant United States Attorneys

# United States v. Sherri Papini
# Penalties for Information

**COUNT 1:**

VIOLATION:   18 U.S.C. § 1341 – Mail Fraud

PENALTIES:   Up to 20 years in prison; or
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment
Supervised release of up to 3 years
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**

VIOLATION:   18 U.S.C. § 1001(a)(2) – Making False Statements

PENALTIES:   Up to 5 years in prison; or
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment
Supervised release of up to 3 years
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)