PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
SHELLEY D. WEGER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-0070 WBS |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| SHERRI PAPINI, | |
| Defendant. | |

## I.  INTRODUCTION

### A.  Scope of Agreement.

The Information in this case charges the defendant with violations of  18 U.S.C. § 1341 – mail fraud (Counts One through Thirty-Four), and 18 U.S.C. § 1001(a)(2) – making false statements (Count Thirty-Five).  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.  Court Not a Party.

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the

PLEA AGREEMENT                                          1

1  discretion of the Court, and the Court may take into consideration any and all facts and circumstances

2  concerning the criminal activities of defendant, including activities which may not have been charged in

3  the Information.  The Court is under no obligation to accept any recommendations made by the

4  government, and the Court may in its discretion impose any sentence it deems appropriate up to and

5  including the statutory maximum stated in this plea agreement.

6      If the Court should impose any sentence up to the maximum established by the statute, the

7  defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all

8  of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

9  defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will

10  receive.

11                      II.      **DEFENDANT'S OBLIGATIONS**

12      A.      **Guilty Plea.**

13      The defendant will plead guilty to Count Three, mail fraud in violation of 18 U.S.C. § 1341, and

14  Count Thirty-Five, making false statements in violation of 18 U.S.C. § 1001(a)(2) .  The defendant

15  agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea

16  attached hereto as Exhibit A are accurate.

17      The defendant agrees that this plea agreement will be filed with the Court and become a part of

18  the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw

19  her pleas should the Court not follow the government's sentencing recommendations.

20      The defendant agrees that the statements made by her in signing this Agreement, including the

21  factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

22  the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

23  guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f)

24  and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this

25  Agreement generally.

26          1.      Waiver of Indictment:

27      The defendant acknowledges that under the United States Constitution she is entitled to be

28  indicted by a grand jury on the charges to which she is pleading guilty and that pursuant to

PLEA AGREEMENT                                    2

1   Fed.R.Crim.P. 7(b) she agrees to waive any and all rights she has to being prosecuted by way of

2   indictment to the charges set forth in the information.  The defendant agrees that at a time set by the

3   Court, she will sign a written waiver of prosecution by Indictment and consent to proceed by

4   Information rather than by Indictment.

5           **B.**      **Restitution.**

6           The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of

7   certain offenses.

8                   1.      MVRA- Multi-victim and/or multiple counts

9           Defendant agrees that her conduct is governed by the Mandatory Restitution Act pursuant to 18

10  U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by

11  this offense, including, but not limited to, the victims covered in the factual basis, victims covered in

12  those counts to be dismissed or not charged as part of the plea agreement pursuant to 18 U.S.C.

13  § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the

14  periods of December 2015 through the present day.  The amount of restitution will be at least

15  $158,261.75 dollars to the victims listed below:

16                      i.  California Victims Compensation Board ("CalVCB"): at least $30,694.15

17                      ii.  United States Social Security Administration ("SSA"): at least $127,567.60

18                  2.      Non-MVRA type cases - Voluntarily agrees to pay restitution as part of
                          agreement:

19

20          In addition, defendant agrees to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) in the amount

    of $151,424.58 to the victims listed below:

21

22                      i.  Shasta County Sheriff's Office ("SCSO"): $148,866.23

23                      ii.  Federal Bureau of Investigation ("FBI"): $2,558.35

24          Defendant agrees that all criminal monetary penalties imposed by the court, including restitution,

25  will be due in full immediately at time of sentencing and subject to immediate enforcement by the

26  government.  Defendant agrees that any payment schedule or plan set by the court is merely a minimum

27  and does not foreclose the United States from collecting all criminal monetary penalties at any time

28  through all available means.

PLEA AGREEMENT                    3

1    Defendant further agrees that she will not seek to discharge any restitution obligation or any part

2 of such obligation in any bankruptcy proceeding.

3    Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets

4 without prior written consent of the United States Attorney, except that the defendant may sell, transfer

5 or convey personal property (including used vehicles and personal items, but not financial instruments,

6 ownership interests in business entities or real property) with an aggregate value of less than $5,000.

7    Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the

8 Court.

9    **C.    Fine.**

10    The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay

11 a fine, and that no fine should be imposed.  The defendant understands that it is her burden to

12 affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under

13 penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft

14 Presentence Investigation Report, along with supporting documentation.  The government retains the

15 right to oppose the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if

16 and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

17    **D.    Special Assessment.**

18    The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering

19 a check or money order payable to the United States District Court to the United States Probation Office

20 immediately before the sentencing hearing.  The defendant understands that this plea agreement is

21 voidable at the option of the government if she fails to pay the assessment prior to that hearing.  If the

22 defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money

23 to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

24    **E.    Violation of Plea Agreement by Defendant/Withdrawal of Pleas.**

25    If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw

26 her plea, this plea agreement is voidable at the option of the government.  If the government elects to

27 void the agreement based on the defendant's violation, the government will no longer be bound by its

28 representations to the defendant concerning the limits on criminal prosecution and sentencing as set

PLEA AGREEMENT                                                4

1    forth herein.  A defendant violates the plea agreement by committing any crime or providing or

2    procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in

3    any litigation or sentencing process in this case, or engages in any post-plea conduct constituting

4    obstruction of justice.  Varying from stipulated Guidelines application or agreements regarding

5    arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through

6    counsel, also constitutes a violation of the plea agreement.  The government also shall have the right (1)

7    to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts

8    that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would

9    otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for

10   any federal criminal violation of which the government has knowledge.  The decision to pursue any or

11   all of these options is solely in the discretion of the United States Attorney's Office.

12        By signing this plea agreement, the defendant agrees to waive any objections, motions, and

13   defenses that the defendant might have to the government's decision.  Any prosecutions that are not

14   time-barred by the applicable statute of limitations as of the date of this plea agreement may be

15   commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

16   limitations between the signing of this plea agreement and the commencement of any such prosecutions.

17   The defendant agrees not to raise any objections based on the passage of time with respect to such

18   counts including, but not limited to, any statutes of limitation or any objections based on the Speedy

19   Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as

20   of the date of this plea agreement.  The determination of whether the defendant has violated the plea

21   agreement will be under a probable cause standard.

22        In addition, (1) all statements made by the defendant to the government or other designated law

23   enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

24   whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

25   administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

26   claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

27   Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

28   the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

PLEA AGREEMENT                                            5

1    By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

2         **F.    Asset Disclosure.**

3         The defendant agrees to make a full and complete disclosure of her assets and financial

4    condition, and will complete the United States Attorney's Office's "Authorization to Release

5    Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the

6    defendant's change of plea, including supporting documentation.  The defendant also agrees to have the

7    Court enter an order to that effect.  The defendant understands that if she fails to complete truthfully and

8    provide the described documentation to the United States Attorney's Office within the allotted time, she

9    will be considered in violation of the agreement, and the government shall be entitled to the remedies set

10   forth in section II.E above.

11        Defendant expressly authorizes the United States to immediately obtain a credit report to

12   evaluate defendant's ability to satisfy any monetary penalty imposed by the court.  Defendant also

13   authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held

14   by the U.S. Probation Office.

15                    **III.       THE GOVERNMENT'S OBLIGATIONS**

16        **A.    Dismissals/Other Charges.**

17        The government agrees to move, at the time of sentencing, to dismiss without prejudice the

18   remaining counts in the pending information.  The government also agrees not to bring any other

19   charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A.

20   Additionally, the government agrees not to bring any charges related to any alleged violations regarding

21   defrauding the United States Social Security Administration related to Social Security Disability benefits

22   issued to Sherri Papini based on her supposed "kidnapping" from November 2016 up through the date of

23   March 28, 2022.  The government agrees to the above so long as this agreement is not voided as set

24   forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal

25   of Pleas), VI.B (Stipulations Affecting Guideline Calculation), and VII.B (Waiver of Appeal and

26   Collateral Attack) herein.

27

28

PLEA AGREEMENT                                    6

**B.     Recommendations.**

        1.     Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the

applicable guideline range as determined by the Court.

        2.     Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a

three-level reduction (if the offense level reaches 16) in the computation of her offense level if the

defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G.

§ 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation

of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise

engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either

in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.     Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation,

including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

statements or arguments by the defendant, her attorney, Probation, or the Court.  The defendant also

understands and agrees that nothing in this Plea Agreement bars the government from defending on

appeal or collateral review any sentence that the Court may impose.

**IV.     ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following

elements of the offenses to which the defendant is pleading guilty:

**A.     Count Three, Mail Fraud in Violation of 18 U.S.C. § 1341.**

        1.     First, the defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

        2.     Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

PLEA AGREEMENT

7

3.      Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

4.      Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

**B.      Count Thirty-Five, Making False Statements in Violation of 18 U.S.C. § 1001(a)(2).**

1.      First, the defendant made a false statement;

2.      Second, the false statement was made in a matter within the jurisdiction of an agency or department of the United States;

3.      Third, the defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that her conduct was unlawful; and

4.      Fourth, the statement was material to the activities or decisions of the federal agency; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

The defendant fully understands the nature and elements of the crimes charged in the Information to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.      MAXIMUM SENTENCE

**A.      Maximum Penalty.**

The maximum sentence that the Court can impose for Count Three, mail fraud in violation 18 U.S.C. § 1341, is 20 years of incarceration, a fine of $250,000 or twice the gross gain or loss, whichever is greater, a three-year period of supervised release, and a special assessment of $100.

The maximum sentence that the Court can impose for Count Thirty-Five, making false statements in violation of 18 U.S.C. § 1001(a)(2)  is 5 years of incarceration, a fine of $250,000, a three-year period of supervised release and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which she is pleading guilty.  The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

PLEA AGREEMENT

8

1    **B.      Violations of Supervised Release.**

2         The defendant understands that if she violates a condition of supervised release at any time

3    during the term of supervised release, the Court may revoke the term of supervised release and require

4    the defendant to serve up to three additional years imprisonment.

5                            **VI.      SENTENCING DETERMINATION**

6         **A.      Statutory Authority.**

7         The defendant understands that the Court must consult the Federal Sentencing Guidelines and

8    must take them into account when determining a final sentence.  The defendant understands that the

9    Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

10   Sentencing Guidelines and must take them into account when determining a final sentence.  The

11   defendant further understands that the Court will consider whether there is a basis for departure from the

12   guideline sentencing range (either above or below the guideline sentencing range) because there exists

13   an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

14   consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further

15   understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

16   impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

17        **B.      Stipulations Affecting Guideline Calculation.**

18        The government and the defendant agree that there is no material dispute as to the following

19   sentencing guidelines variables and therefore stipulate to the following:

20            1.      Base Offense Level:  +7 (U.S.S.G. § 2B1.1(a)(1))

21            2.      Loss Amount:  +4 for over $15,000 loss (U.S.S.G. § 2B1.1(b)(1)(C))

22            3.      Adjustments: + 2 for obstruction of justice (U.S.S.G. § 3C1.1)

23            4.      Acceptance of Responsibility:  See paragraph III.B.2 above

24            5.      Criminal History:  The parties estimate, but do not stipulate, that the defendant's
                     criminal history category will be I.

25
              6.      Sentencing Range:  The parties estimate, but do not stipulate, that the defendant's
26                   sentencing range will be 8-14 months (The defendant understands that if the criminal
                     history category differs from the parties' estimate, her Guidelines sentencing range may
27                   differ from that set forth here.)

28        The parties agree that they will not seek or argue in support of any other specific offense

     PLEA AGREEMENT                                   9

1    characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

2    or cross-references, except that the government may move for a departure or an adjustment based on the

3    defendant's post-plea obstruction of justice (§3C1.1).  Both parties agree not to move for, or argue in

4    support of, any departure from the Sentencing Guidelines.  The defendant is free to recommend to the

5    Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a).  The government

6    reserves the right to oppose any such recommendation, and will recommend a sentence at the low end of

7    the applicable Guideline range as determined by the Court.

8                                     **VII.    WAIVERS**

9            **A.    Waiver of Constitutional Rights.**

10           The defendant understands that by pleading guilty she is waiving the following constitutional

11   rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

12   be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative

13   defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of

14   conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to

15   testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be

16   compelled to incriminate herself.

17           **B.    Waiver of Appeal and Collateral Attack.**

18           The defendant understands that the law gives the defendant a right to appeal her guilty plea,

19   conviction, and sentence.  The defendant agrees as part of her pleas, however, to give up the right to

20   appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

21   exceed the statutory maximums for the offenses to which she is pleading guilty.  The defendant

22   understands that this waiver includes, but is not limited to, any and all constitutional and/or legal

23   challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which

24   defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

25   attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant

26   specifically gives up the right to appeal any order of restitution the Court may impose.

27           Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

28   one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

PLEA AGREEMENT                                10

1  statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant

2  understands that these circumstances occur infrequently and that in almost all cases this Agreement

3  constitutes a complete waiver of all appellate rights.

4        In addition, regardless of the sentence the defendant receives, the defendant also gives up any

5  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

6  aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

7        Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

8  attempts to vacate her pleas, dismiss the underlying charges, or modify or set aside her sentence on any

9  of the counts to which she is pleading guilty, the government shall have the rights set forth in Section

10  II.E herein.

11        **C.      Waiver of Attorneys' Fees and Costs.**

12        The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

13  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

14  investigation and prosecution of all charges in the above-captioned matter and of any related allegations

15  (including without limitation any charges to be dismissed pursuant to this plea agreement and any

16  charges previously dismissed).

17        **D.      Impact of Plea on Defendant's Immigration Status.**

18        Defendant recognizes that pleading guilty may have consequences with respect to her

19  immigration status if she is not a citizen of the United States.  Under federal law, a broad range of

20  crimes are removable offenses, including offenses to which the defendant is pleading guilty.  Removal

21  and other immigration consequences are the subject of a separate proceeding, however, and defendant

22  understands that no one, including her attorney or the district court, can predict to a certainty the effect

23  of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead

24  guilty regardless of any immigration consequences that her plea may entail, even if the consequence is

25  her automatic removal from the United States.

26        **VIII.      ENTIRE PLEA AGREEMENT**

27        Other than this plea agreement, no agreement, understanding, promise, or condition between the

28  government and the defendant exists, nor will such agreement, understanding, promise, or condition

PLEA AGREEMENT                                  11

1    exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

2    counsel for the United States.

3                  **IX.**      **APPROVALS AND SIGNATURES**

4        **A.**      **Defense Counsel.**

5        I have read this plea agreement and have discussed it fully with my client.  The plea agreement

6    accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to

7    plead guilty as set forth in this plea agreement.

8    Dated:

9                                           WILLIAM J. PORTANOVA
                                          Attorney for Defendant

10

11

12        **B.**      **Defendant:**

13        I have read this plea agreement and carefully reviewed every part of it with my attorney.  I

14    understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully

15    understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

16    case.  No other promises or inducements have been made to me, other than those contained in this plea

17    agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.

18    Finally, I am satisfied with the representation of my attorney in this case.

19    Dated:

20                                           SHERRI PAPINI
                                          Defendant

21        **C.**      **Attorney for United States:**

22        I accept and agree to this plea agreement on behalf of the government.

23    Dated:     4/12/2022                  PHILLIP A. TALBERT
                                           United States Attorney

24

25

26                                           VERONICA M.A. ALEGRÍA
                                          SHELLEY D. WEGER
                                          Assistant United States Attorneys

27

28

PLEA AGREEMENT                              12

1

EXHIBIT "A"

2

Factual Basis for Pleas

3        Defendant Sherri PAPINI knowingly planned and participated in her own hoax kidnapping and
then made materially false statements to FBI agents about the circumstances of her disappearance and
4   committed mail fraud based on her hoax kidnapping.  As early as December 2015, PAPINI began
communicating with her ex-boyfriend ("Ex-Boyfriend") and eventually communicated her plan to run
5   away from her home and family in Redding, California, and requested Ex-Boyfriend's assistance.
PAPINI sought to conceal the existence of her communications with Ex-Boyfriend by using her work
6   phone and later prepaid cellular phones, despite the fact that PAPINI possessed her own personal
cellular phone.  PAPINI instructed Ex-Boyfriend to purchase prepaid cellular telephones that were not
7   listed in her name, which he did in December 2015 and March 2016.

8        Later, PAPINI instructed Ex-Boyfriend when and where to meet her in Redding, California, so
that he could pick her up and drive her to Ex-Boyfriend's residence in Costa Mesa, in Southern
9   California.  Starting on or around November 1, 2016, Ex-Boyfriend drove a rental car to Redding,
California, where he waited for further instructions from PAPINI.  On November 2, 2016, at
10  approximately 10:57 a.m., PAPINI used her prepaid cellular phone to send a text message to Ex-
Boyfriend.  Around noon that day, PAPINI left her home in running attire and carrying her regular
11  cellular telephone and the prepaid cellular telephone she had used to communicate with Ex-Boyfriend.
PAPINI met Ex-Boyfriend at the location she designated near Sunrise Drive and voluntarily got into the
12  rental car.  Before doing so, PAPINI left her regular cellular telephone on the ground next to strands of
her hair.  PAPINI and Ex-Boyfriend traveled by car to Ex-Boyfriend's residence in Costa Mesa,
13  California.

14       PAPINI voluntarily stayed at Ex-Boyfriend's residence for over three weeks, until on or about
November 23 or 24, 2016.  During that time, PAPINI took steps to make it appear as if she had been
15  physically abused.  PAPINI stayed indoors and instructed Ex-Boyfriend to keep her presence at the
house secret.

16

17       On or about November 23 and 24, 2016, PAPINI and Ex-Boyfriend drove the rental car from
Costa Mesa, California, to Northern California.  Ex-Boyfriend dropped off PAPINI near Interstate 5 in
18  or around Woodland, California, where PAPINI was eventually recovered by law enforcement, wearing
various bindings to further her false narrative that she had been kidnapped.

19       When interviewed by law enforcement, PAPINI stated falsely that two Hispanic women had
abducted her at gunpoint.  PAPINI repeated her false claims that she had been abducted by two Hispanic
20  women and provided additional details of her supposed kidnapping during additional interviews and
communications with law enforcement officers that occurred between November 2016 and August
21  2020.  These communications included multiple conversations with a Federal Bureau of Investigation
("FBI") sketch artist to create FBI "Wanted" posters based on PAPINI's descriptions of the two
22  Hispanic women she claimed abducted her.

23       On or about August 13, 2020, PAPINI was voluntarily interviewed by law enforcement agents,
including an agent from the FBI about her purported kidnapping.  At the beginning of the interview, the
24  FBI agent told PAPINI that it was a crime to lie to federal agents and asked if she understood.  PAPINI
shook her head up and down in a yes-like manner, acknowledging she understood.  During the
25  interview, PAPINI discussed details of the purported "kidnapping" and falsely stated the younger of the
two kidnappers let her go and was the nicer of the two, and that the older kidnapper was really abusive
26  and really mean and did all of the really terrible things.  When the agents later confronted PAPINI with
evidence that she was not in fact kidnapped but had instead voluntarily stayed with Ex-Boyfriend,
27  PAPINI falsely denied Ex-Boyfriend's involvement, that Ex-Boyfriend picked PAPINI up at her
request, and that there was in fact no abduction.

28

PLEA AGREEMENT                                          A-1

1    The FBI is an agency of the United States and is statutorily authorized to investigate federal crimes including kidnapping in violation of 18 U.S.C. § 1201.  The August 13, 2020 interview during
2    which PAPINI made the above-identified false statements was part of an ongoing federal investigation into a possible violation of 18 U.S.C. §1201.  PAPINI's false statements were capable of influencing the
3    FBI's investigative decisions and did, in fact, influence the investigation by causing the FBI to conduct further investigation after the August 2020 interview to reconcile the differences between PAPINI's
4    claim that she was kidnapped and the Ex-Boyfriend's statement that PAPINI had executed her own plan to run away from her home and stay with him voluntarily.
5
6    After her return in November 2016, PAPINI applied to the California Victim Compensation Board ("CalVCB") to obtain money based on her claimed status as a kidnapping victim, and
     subsequently received funds to pay for new blinds in her home, ambulance costs incurred upon her
7    return, and therapist costs for alleged anxiety and PTSD from her supposed kidnapping.  PAPINI signed the application to receive CalVCB funds under penalty of perjury.  The application signed by PAPINI
8    contained false statements regarding her supposed kidnapping, including that she had been ordered into a vehicle by two suspects with handguns, that the suspects held her captive for 22 days before releasing
9    her, that she had attempted to escape several times, and that PAPINI had "fully cooperated with the investigation."  The CalVCB would not have approved PAPINI's application or paid for any benefits if
10   it had known that PAPINI was not the victim of a kidnapping.

11   Once payment requests for financial assistance were approved by the CalVCB, the California State Controller's Office ("CSCO") mailed checks to the designated reimbursement recipient via the
12   U.S. mail.  Specifically, on or about August 7, 2017, CSCO sent a check to PAPINI's therapist via the U.S. mail in the amount of $2,997 as payment for PAPINI's therapy sessions for anxiety and PTSD from
13   her purported "kidnapping."  PAPINI was notified of every reimbursement CalVCB made as part of the Victim Assistance program via detailed statements mailed to PAPINI's home address.
14
15   PAPINI's CalVCB fraud continued until at least March 2021.  In total, PAPINI defrauded the CalVCB of at least $30,694.15.  Additionally, the Shasta County Sheriff's Office ("SCSO") and the FBI
     expended resources to conduct a nation-wide search for PAPINI during the 22 days she was missing,
16   and then expended additional resources to hunt for PAPINI's purported "abductors" based on her continued fraudulent and false statements.  The SCSO expended approximately $148,866.23 and the FBI
17   expended approximately $2,558.35.

18

19          I, Sherri Papini, have read and carefully reviewed the above Exhibit A:
            Factual Basis for Plea with my attorney.  As far as my own conduct and
20          the conduct of which I am aware is concerned, the facts described above
            are true and I adopt this Factual Basis as my own true statement.
21
     Dated:  4/12/22
22                                              _____
                                                SHERRI PAPINI
23                                              Defendant

24

25

26

27

28

PLEA AGREEMENT                              A-2