PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 22-CR-00070-WBS |
|---|---|
| Plaintiff, | UNITED STATES'S AMENDED SENTENCING MEMORANDUM |
| v. | |
| SHERRI PAPINI, | DATE: September 19, 2022<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |
| Defendant. | |

The United States respectfully submits this amended sentencing memorandum to correct typographical errors appearing in its original filing submitted to the Court on September 12, 2022, and to add in one additional citation to the record. This amended filing is otherwise substantively the same as the government's original filing. *See* ECF 43.

Sherri Papini should be sentenced to eight months' imprisonment. This low-end Guidelines sentence is consistent with the terms of the parties' plea agreement, fully and fairly accounts for the totality of Papini's conduct and the relevant sentencing factors, and is sufficient but not greater than necessary to satisfy the sentencing purposes in 18 U.S.C. § 3553(a). A lesser sentence, such as the one month of imprisonment recommended by probation or home detention in lieu of incarceration, is not sufficient to achieve the purposes of sentencing. *See* ECF No. 41-2 at 1, 2 (Second Revised PSR, hereinafter "PSR"). Papini planned and executed a sophisticated kidnapping hoax, and then continued to perpetuate her false statements for years after her return without regard for the harm she caused

others. As a result, state and federal investigators devoted limited resources to Papini's case for nearly four years before they independently learned the truth: that she was not kidnapped or tortured. During this time, Papini caused innocent individuals to become targets of a criminal investigation. She left the public in fear of her alleged Hispanic capturers who purportedly remained at large. Papini not only retold her false statements to law enforcement, including in August 2020 when she was confronted with evidence of the truth, but also to the California Victim Compensation Board and the Social Security Administration in order to obtain financial benefits to which she was not entitled. Although eight months of prison time is warranted, anything more than a low-end Guidelines sentence would be more than necessary to comply with the sentencing purposes in this case, which resolved early with a prompt guilty plea to an information.

### I.   THE PLEA AGREEMENT

On April 18, 2022, Papini pleaded guilty to two counts of a 35-count information admitting that she engaged in mail fraud, in violation of 18 U.S.C. § 1341, and made false statements in violation of 18 U.S.C. § 1001. ECF Nos. 23, 26.

In the plea agreement between the parties, the defendant stipulated, *inter alia*, to (1) a loss amount of $30,694.15 caused by her scheme to defraud the California Victims' Compensation Board; (2) the applicability of Guidelines provisions, including an upward adjustment for obstruction of justice, that result in a sentencing range of 8-14 months after credit for acceptance of responsibility (assuming a Criminal History Category of I); and (3) restitution totaling $309,686.33 consisting of $30,694.15 to the California Victim Compensation Board, $127,783.50 to the Social Security Administration, $148,866.23 to the Shasta County Sheriff's Office and $2,558.35 to the Federal Bureau of Investigations. ECF No. 26.

In exchange, the government agreed: (1) to dismiss the remaining counts of the information and to not bring any other charges arising from the conduct outlined in the Factual Basis to the plea agreement or related to Social Security Administration disability benefits issued to Papini from November 2016 through March 28 2022, based on Papini's representation that she was kidnapped; (2) to recommend a reduction in the offense level for acceptance of responsibility; (3) to recommend a sentence at the low end of the guideline range as determined by the Court; and (4) that Papini could

argue for whatever sentence she felt appropriate under 18 U.S.C. §3553(a).  ECF No. 26 at 6.

The final revised PSR is in accord with the parties' stipulated Guidelines provisions and neither party filed any objections to the final revised PSR.  *See* ECF No. 41.

///

## II.   FACTS

In November 2016, Papini staged her own disappearance to look like a kidnapping.  Papini disappeared for 22 days and despite national media attention about her disappearance, she remained in hiding while her family, community, and law enforcement searched for her whereabouts.  PSR ¶ 6.  After 22 days Papini returned.  She had inflicted injuries on herself, including a brand on her right shoulder, and claimed that she had been tortured.  PSR ¶¶ 10, 11, 18.  Over the next four-plus years, Papini repeated a detailed false story about two Hispanic women taking her at gunpoint and inflicting abuse upon her while holding her against her will.  Papini's kidnapping hoax was deliberate, well-planned, and sophisticated.

Papini's false reports about being kidnapped were not something she invented after her return to avoid the repercussions of running away from her husband and family.  Rather, the evidence shows that Papini planned this hoax before her disappearance.  Almost a year before her disappearance, in December 2015, before her disappearance Papini began communicating with her ex-boyfriend on burner phones for anonymity.  PSR ¶ 15, Complaint ¶ 45.  Notably, Papini spoke to other men using her work or personal phone and she took steps to conceal these contacts.  For instance, law enforcement found men's phone numbers saved in her phone under female names.  Complaint ¶ 10.  But when it came to the particular ex-boyfriend who seems to have unknowingly assisted in the kidnapping hoax, Papini did not merely conceal his phone number in her phone, but purchased a burner phone that she used almost exclusively to communicate with him, and instructed the ex-boyfriend to do the same.  PSR ¶ 15.  As Papini described to law enforcement during an interview about her purported kidnapping, she purposefully left her cell phone with strands of her hair lying along the road knowing her family would find them.  Although Papini intended for this statement to corroborate her kidnapping, it shows her forethought and the sophistication of her plan to carry out a convincing hoax.  These details, among others, show Papini's hoax was contemplated well in advance of her disappearance and that she took

purposeful, contemplative steps to trick the public, her family, and law enforcement into believing the kidnapping and torture were real.

For four years after Papini returned, law enforcement continued working to identify Papini's abductors. In furtherance of this investigation, the FBI brought in a forensic interviewer to interview Papini. PSR ¶ 9. Papini continued to make false statements. The FBI also hired someone to meet with Papini and create sketches of her abductors for wanted posters.

On August 13, 2020, after law enforcement had evidence showing Papini had not been kidnapped, a special agent with the Federal Bureau of Investigation and a detective with the Shasta County Sheriff's Office met with Papini. At the outset of the meeting, they told Papini it was a crime to lie to federal agents. Papini continued to claim she was kidnapped. Later in the interview, Papini was again warned that it was a crime to lie to federal agents and told about the DNA and telephone evidence showing that she had been with her ex-boyfriend. Yet even this second warning and evidence of the truth did not deter Papini from continuing to make false statements.

Papini not only made false statements to law enforcement, her friends and family, and therapist, but she also made false statements to the California Victim Compensation Board and the Social Security Administration in order to receive benefits as a result of her alleged "post-traumatic stress" from being abducted.

### III. UNITED STATES'S SENTENCING RECOMMENDATION

The government recommends a total term of 8 months' imprisonment, followed by 3 years of supervised release, no fine, and a mandatory special assessment of $200. This sentence would satisfy each of the factors set forth in 18 U.S.C. § 3553(a) and would be "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2). A total sentence of 8 months' imprisonment fully and fairly accounts for all relevant factors. The 3553(a) factors instruct the Court to consider, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, deter further crimes, and promote respect for the law. *See* 18 U.S.C. § 3553(a)(1)-(2).

A low-end Guidelines sentence of eight months' imprisonment is appropriate because of the real

harms that Papini's actions caused. A downward variance or split sentence is not appropriate in this case. Papini's criminal conduct was serious and had far reaching effects that are not captured by the loss amount or Guidelines. The probation officer describes many of these effects in the sentencing recommendation. Papini's crime has many societal harms such as causing the public to live in fear and possibly causing law enforcement to doubt the veracity of future victims' claims. An entire community believed the hoax and lived in fear that Hispanic women were roving the streets to abduct and sell women. The community also rallied around Papini while she was missing for three weeks, spending incalculable hours, money, and effort in the search for Papini. Additionally, when Papini defrauded the California Victims' Compensation Board and law enforcement, she was taking away resources that should have been used to support real victims and catch real criminals. These unnamed victims and community members are not contemplated by the Guidelines calculation but should be recognized as part of the real harm that occurred from Papini's actions. Additionally, the Guidelines do not fully capture the financial harm from Papini's conduct, as they do not account for investigative costs incurred by local and federal officers, the $127,783.50 Papini obtained in disability benefits from the Social Security Administration, or the $49,070 that community members donated to a GoFundMe account to help with the search. While appropriately not considered as part of the Guidelines calculation, these costs must still be weighed as part of the determination of the seriousness of Papini's crimes. Papini's sentence must hold her accountable for charged, uncharged, and even acquitted conduct that occurred during the offense of conviction. *See United States v. May*, 706 F.3d 1209, 1213 (9th Cir. 2013). Just punishment requires Papini receive a low-end sentence consisting of 8 months' imprisonment.

A sentence of eight months' imprisonment is also necessary for specific and general deterrence. While it is unlikely that Papini could ever repeat a feigned kidnapping, a sentence of imprisonment is necessary to deter her from defrauding the government and public by other means. This case demonstrates that she is capable of carrying out sophisticated schemes and that the consequences of a short term of punishment will not stop her. She maintained her hoax and received Social Security and California Victims' benefits for years, demonstrating that she had no remorse for her actions even after the FBI presented her with evidence of her fraud. Additionally, it is concerning that she has continued to tell multiple people, contrary to her plea and sworn statement before the Court, that she was in fact

kidnapped. Only a term of imprisonment will deter Papini from continuing future crimes, including continued false assertions that she was kidnapped.

Moreover, general deterrence weighs heavily in favor of a low-end Guidelines sentence served in prison. This case has garnered significant media attention and the nation is watching the outcome of Papini's sentencing hearing. The public needs to know that there will be more than a slap on the wrist for committing financial fraud and making false statements to law enforcement, particularly when those false statements result in the expenditure of substantial resources and implicate innocent people. A one-month prison sentence will send the wrong message to both Papini and the public: such a *de minimis* and lenient sentence would wrongly suggest that people can commit these types of crimes with near impunity.

Papini's history, however difficult it may have been, does not warrant a downward variance or split sentence, as it does not negate the need for punishment, the need to promote respect for the law, or the need deter future criminal conduct. It is also not significantly different from many other criminals who have been sentenced to a Guidelines term of imprisonment. Although Papini's current therapist attempts to provide the Court with explanations for Papini's criminal conduct to mitigate her culpability, the Court should carefully weigh the therapist's opinions against Papini's known history. Significantly, Papini misled her original therapist for over four years, convincing that therapist that she had in fact been kidnapped. Papini also convinced her family and friends – those who know her best – that she had been kidnapped and tortured and was suffering because of the abuses that she actually committed upon herself. Now that Papini is facing prison time, she has motive to do whatever is necessary to avoid punishment, including making statements to her therapist and family members that she believes will garner the most leniency from the Court. Papini's history and characteristics are balanced against the serious nature and circumstances of Papini's crimes, making a low-end Guidelines sentence appropriate in this case.

In fashioning its plea offer, the government accounted for the factors the PSR identifies as mitigating and those factors that will likely be raised by the defendant at sentencing. Papini's past trauma and mental health issues alone cannot account for all of her actions. Papini's actions were well-planned and deliberately considered. She was able to evade a nation-wide manhunt, including the

combined forces of the FBI and local police, for 22 days until she staged her dramatic return. Papini's planning of her hoax kidnapping was meticulous and began months in advance – it was not merely the reaction to a traumatic childhood. Additionally, although she may have been trying to keep her husband and family from discovering that she had run away to spend three weeks with her ex-boyfriend, Papini took her hoax even farther when she applied for disability benefits from the Social Security Administration and victims benefits from Cal VCB. Papini continued to receive these benefits until she was arrested. She profited from her actions, and nothing that her therapist or other supporters have stated can provide an excuse for her profiteering acts. These additional fraudulent acts suggest that Papini was not, as her therapist opines, merely coping with past abuse, but calculating to create additional benefits from her crimes. Papini's actions had real negative consequences for the community and other victims. There needs to be just punishment for her conduct.

Finally, Section 3553(a) also requires the Court to minimize sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6). One way of doing so is to correctly calculate the Guidelines range. *United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."). Accordingly, the Government's recommended sentence at the low end of the Sentencing Guidelines will minimize sentencing disparities.

## IV.   CONCLUSION

For the foregoing reasons, the defendant should be sentenced at the low end of the Sentencing Guidelines: an 8-month term of imprisonment, followed by 3 years of supervised release, no fine, and a mandatory special assessment of $200.

Dated: September 14, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Veronica M.A. Alegría*
VERONICA M.A. ALEGRÍA
SHELLEY D. WEGER
Assistant United States Attorney